## TEELE, *qui tam, &c.* against FONDA.

THIS was an action of debt brought on the statute " to prevent and punish champerty and maintenance," (*Laws*, vol. 1. sess. 24. c. 87. p. 345.) against the defendant, for purchasing, on the 19th *December*, 1806, of *Nathaniel Ogden*, lot No. 78. in the township of *Manlius*, in the county of *Onondaga*, the said *Ogden* pretending title thereto, but be- Where a person purchases land, knowing at the time that the same is held adversely to the person of whom he purchases, by persons claiming by deed, he is liable, under the " act to pre-vent and punish champerty and maintenance," to an action for the value of the land, held adversely, and the improvements thereon.

ing disseised thereof at the time of the purchase. Plea *nil debet.*

The 8th section of the statute declares, " That no person shall buy or sell, or by any means procure any pretended right or title, or make or take any promise, grant, or covenant to have any right or title of any person to any lands, tenements or hereditaments, unless such person who shall so bargain, sell, covenant or promise the same, or his ancestors, or those by whom he claims the same, have been in possession of the same, or of the reversion or remainder thereof, or taken the rents and profits thereof, for the space of one whole year next before the said bargain, &c. upon pain that he who shall make any such bargain, &c. shall forfeit the whole value of such lands, tenements or hereditaments; and the buyer or taker thereof, knowing the same, shall also forfeit the value of the said lands, tenements or hereditaments; the one half of the said forfeitures to be to the use of the people of the state; and the other half to the party that will sue for the same in any court of record," &c.

The cause was tried at the *Onondaga* circuit, the 4th *June*, 1810, before the *Chief Justice.*

At the trial, *Miller*, a witness for the plaintiff, testified, that in 1804 or 1805, *Ogden* offered to sell the lot to him, but the witness declined purchasing, as he had bought the land once, and told *Ogden* that the lot was settled by a number of persons, several of whom had got deeds, and the witness then lived on the land. Another witness also testified that, in 1805, he told *Ogden* that he had surveyed and subdivided the lot by direction of *Judah Williams*, and that several settlers had made improvements on the lot under *Williams.*

*L. Foster* also testified, that in *December*, 1806, in answer to the inquiry of the defendant about the lot, and the settlers, the witness informed him who the persons were who had settled on the lot; that the defendant then informed the witness, that he purchased the lot of *Ogden* at *Coeymans;* that before the purchase, *Ogden* told him that

he claimed the lot, that there were settlers on it, but he would not lose it; that he was not in a situation to recover it, but wished the defendant to bring actions for that purpose; and that the adverse title was from *Ely* to *Williams*, and from the latter to the settlers. The defendant also told the witness that he did not think he could hold the lot, but he should not lose any thing, as *Ogden* was to make him good, if he lost the lot, and showed a deed from *Ogden;* and at the same time inquired the names of the persons in possession, in order to bring actions of ejectment against them.

The plaintiff also gave in evidence several title deeds, dated in 1800, 1802, and 1805, to the several persons in possession of the land, and various acts of ownership were also proved prior to 1806. The value of the improved land under cultivation, being about 132 acres, and including houses, barns, orchards, &c. was proved to be 3,225 dollars. The present suit was commenced the 14th *November*, 1807.

The defendant gave in evidence an award of the *Onondaga* commissioners.

The *Chief Justice* charged the jury, that, in his opinion, the plaintiff was entitled to recover the sum of 3,225 dollars, being the value of the improved land; and the jury found a verdict for the plaintiff accordingly.

A motion was made, in behalf of the defendant, to set aside the verdict, and for a new trial ; 1. Because the *Chief Justice* misdirected the jury; 2. Because the plaintiff did not prove that *Ogden* was disseised of all the land, for the value of which the verdict was given, nor that the defendant knew that *Ogden* was disseised.

*Cady*, for the defendant. He cited 2 *Hawk. P. C. Champerty*, p. 409. s. 14. and p. 419. s. 11.   1 *Johns. Cas.* 85.

NEW-YORK, Nov. 1810.

TEELE v. FONDA.

NEW-YORK,
Nov. 1810.

BRISTOL
v.
BURT.

*Gold*, contra, cited 1 *Caines' Rep.* 358.  2 *Caines' Rep.* 183.

*Per Curiam.* The evidence is full and complete, that when the defendant bought and purchased the lot in question, on the 19th of *December*, 1806, the whole lot was claimed by deed, by persons under a title hostile and adverse to the title then set up by *Ogden;* that the lands, for the value of which the plaintiff has taken a verdict, were then under actual cultivation, and possessed under such adverse title ; and that all this was known to the defendant at the time of his purchase, and that he purchased with a view of contesting at law, the title set up by the persons in possession, There is no ground whatever to set aside the verdict, and the motion must be denied.