**In the Matter of the CONDEMNATION OF CERTAIN LANDS IN the CITY OF WHITE BEAR LAKE BY the CITY OF WHITE BEAR LAKE HOUSING AND REDEVELOPMENT AUTHORITY.**

No. C4–96–744.

Court of Appeals of Minnesota.

Nov. 12, 1996.

Review Denied Jan. 29, 1997.

Roger A. Jensen, Mitchell W. Converse, Peterson, Bell, Converse & Jensen, P.A., Minneapolis for Respondent City.

Daniel Beeson, Tona E. Tollefson, LeVander, Gillen & Miller, P.A., South St. Paul, for Appellant Thomas Ricci.

Considered and decided by DAVIES, P.J., and KLAPHAKE and PETERSON, JJ.

## OPINION

KLAPHAKE, Judge.

Appellant Thomas J. Ricci appeals from a judgment entered dismissing two parcels from a "quick-take" condemnation petition initiated by respondent City of White Bear Lake Housing and Redevelopment Authority (the city) under Minn.Stat. § 117.042 (1994). Because the record supports the district court's determination that Ricci has no ownership interest in the two parcels and because the dismissal does not prejudice Ricci or otherwise preclude him from bringing a subsequent inverse condemnation action for his claimed implied easements, we affirm.

## FACTS

In July 1995, the city initiated this condemnation proceeding to acquire a number of parcels of land for a redevelopment project. The petition listed Ricci as having a fee interest in parcels B, C, and D.[1] Ricci owned the White Bear Bar, located at Division and Fourth Streets in White Bear Lake. Parcel B contained part of Ricci's parking lot; parcel C abutted parcel B on the east and contained Division Street's sidewalk and roadway; and parcel D, which partially abutted parcel C and lay to its east, contained the State Street right-of-way, a platted, but never constructed, street. The project involved vacation of Division and State Streets, construction of a retail building partially on parcels C and D, and a narrowing and realignment of Division Street.

At a hearing in August 1995, the city moved to dismiss parcels C and D from the petition. Although the city had named Ricci as the owner of parcels C and D, further research revealed that Burlington Northern Railroad, Inc. owned them. At a second hearing on the dismissal motion, David Ericson, an attorney with Equity Title, testified that based on his title examination, Ricci owned parcel B but not parcels C and D. Ricci opposed dismissal, claiming a fee interest in at least a portion of parcels C and D and claiming implied easements of air, light, view and access over parcels C and D.

The district court granted the city's motion to dismiss, concluding that Ricci "has no title or interest in the underlying fee" to parcels C or D and that any right Ricci might have to compensation for loss of an implied easement for light, air, or view over parcels C and D "are speculative and premature at this time." The court further concluded that after reconstruction of Division Street and completion of the redevelopment project, Ricci could initiate an inverse condemnation petition.

A few weeks later, Ricci moved for a new trial based on newly-discovered evidence showing that Division Street was not a city street but a Ramsey County road. Although the city and county were in the process of turning Division Street over to the city, the county had not yet revoked its jurisdiction over the street. At a hearing in October 1995, the city acknowledged that it had misrepresented the true status of Division Street but argued that the issue was now moot because the county had turned Division Street over to the city. The district court denied Ricci's new trial motion.

Ricci appeals from a partial final judgment under Minn. R. Civ. P. 54.02.

## ISSUES

I. Did the district court abuse its discretion in granting the city's motion to dismiss parcels C and D?

II. Did the district court abuse its discretion in denying Ricci's motion for a new trial based on newly-discovered evidence?

## ANALYSIS

### I.

A condemnation petition must include a description of the land to be taken, the purpose of the taking, the name of the condemnor, and the names of "all persons appearing of record" to be the owners. Minn.Stat. § 117.055 (1994). Once filed, the petition represents an admission by the condemnor of its contents. *See Wilcox v. St. Paul & N. Pac. Ry.*, 35 Minn. 439, 443, 29 N.W. 148, 150 (1886). A condemnor may retract this admission by a timely motion to amend its petition. *Id.* (upon discovery that respondent's title in land to be condemned was only qualified or partial, condemnor could either timely abandon proceedings or move to amend its petition); *see also Fletcher v. Chicago, St. P., M. & O. Ry.*, 67 Minn. 339, 342, 69 N.W. 1085, 1086 (1897) (condemnor may strike land from petition when owner of land does not object and other landowners are not prejudiced).

---

1. Parcels B, C, and D are all located within Block 3 of Central Division at White Bear. Parcel B lies within Lots 5, 6, and 7 of Block 3. Ricci claims ownership to only that portion of parcel C lying within Lot 5. He claims ownership to the portion of parcel D that abuts a portion of parcel C lying within Lot 5. Parcel D contained State Street, which formed the eastern boundary of the 1875 plat of Central Division at White Bear.

In deciding whether to allow amendment of the petition, the district court must consider whether the moving party has presented sufficient evidence to support its proposed amendment and whether the non-moving party has shown any prejudice. *See Davis v. Midwest Discount Sec., Inc.,* 439 N.W.2d 383, 388 (Minn.App.1989); *Lol Finance Co. v. Romain Corp.,* 352 N.W.2d 841, 844 (Minn.App.1984). The district court has wide discretion to grant or deny an amendment, and its decision will not be reversed absent a clear abuse of that discretion. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn. 1993).

### Ownership of Parcels

A conveyance of land abutting a street generally carries with it title to the center of the street; upon vacation of the street, title to the center line of the street reverts to the landowner. *Pratt v. Quirk,* 119 Minn. 316, 319, 138 N.W. 38, 39 (1912). This rule is modified, however, when a grantor "expressly makes the nearer external line of the * * * street the boundary line of the tract conveyed"; in that case, no title to the street passes to the abutting landowner. *Id.*

In this case, Ricci claimed a fee interest in a portion of parcel C once Division Street was vacated, by virtue of being given a warranty deed to "all of Lot 5." The city, however, established through Ericson's affidavit and testimony that Ricci's ownership of Lot 5 extended only to Division Street's western sidewalk and not to any of the traveled portions of the street. Ericson explained that one of Ricci's predecessors in title, Josephine Lemenager, mistakenly granted more property than she owned when she conveyed all of Lot 5. Because no portion of parcel C passed to Ricci's predecessors, parcel C was retained by Northern Pacific Railway Company, the predecessor of Burlington Northern. The city presented sufficient evidence to retract its admission that Ricci had a fee interest in parcels C and D.

### Prejudice

Ricci argues that the district court's determination that he has no title or interest in parcels C and D will preclude him from bringing any subsequent quiet title or inverse condemnation action. Condemnation actions, however, neither determine nor dispositively address title. *See State v. District Court,* 128 Minn. 432, 437, 151 N.W. 144, 146 (1915) (condemnation actions do not determine questions of title between various landowners). The district court in this case did not determine title, only ownership interests for the purposes of this condemnation proceeding. In addition, because Burlington Northern was not a party to this action, Ricci is not precluded from challenging its title in another action. The district court's determination is not binding on Ricci in any subsequent title litigation, whether by quiet title or inverse condemnation proceedings. *See Eyre v. City of Faribault,* 121 Minn. 233, 238–41, 141 N.W. 170, 172–73 (1913); *Helgeson v. Gisselbeck,* 375 N.W.2d 557, 559–60 (Minn.App.1985) (condemnation action not bar to subsequent litigation between persons claiming interests in same property), *review denied* (Minn. Dec. 19, 1985).

Ricci further claims he should not be required to bear the burden and expense of bringing a separate action to defend his rights. Because condemnation proceedings are not intended to determine title questions, Ricci eventually would have had to defend or establish any property rights he might have, regardless of the outcome of this condemnation proceeding. And, if forced to bring an inverse condemnation action to protect his rights, Ricci may be entitled to recover attorney fees and costs. *See* Minn.Stat. § 117.195, subd. 2 (1994) (when proceeding dismissed or discontinued, owner may recover reasonable costs and expenses from petitioner); *State by Burnquist v. Miller Home Dev., Inc.,* 243 Minn. 1, 9, 65 N.W.2d 900, 904–05 (1954) (when state brought proceeding to condemn land and right of access appurtenant to land, but abandoned that part of proceeding involving right of access, landowners entitled to costs incurred in defending that taking).

Because the record supports the city's proposed amendment and because Ricci cannot show substantial prejudice by the amendment, we cannot conclude that the district court abused its discretion in dismissing par-

cels C and D from these condemnation proceedings.

## II.

Ricci argues that the district court abused its discretion in denying his motion for a new trial based on newly-discovered evidence. *See* Minn. R. Civ. P. 59.01(d) (new trial may be granted based on "[m]aterial evidence newly discovered, which with reasonable diligence could not have been found and produced at the trial"). That evidence showed that when the condemnation petition was filed and during the August 1995 hearings, Division Street was not a city street but remained within the jurisdiction of the county.

█ Admittedly, Ricci could have discovered this evidence prior to the August hearings. Ricci only requested the city planner's files concerning the redevelopment project. Had he requested the city engineer's files, he would have learned that Division Street had not yet been turned over to the city. However, the city's actions and representations effectively misled Ricci into believing that the city had jurisdiction over Division Street. Ricci had no reason to question the city's representations and has shown that he acted with reasonable diligence: his attorney submitted an affidavit stating that although he had personally and extensively searched the city planner's files and the property records at the County Recorder's Office, he found nothing referencing Division Street as a county road. *Cf. Lewin v. Proehl*, 211 Minn. 256, 262, 300 N.W. 814, 817 (1941) (new trial properly denied when counsel failed to conduct personal search and inspection of files).

█ Nevertheless, this evidence was not material to the issue of whether parcels C and D should have been dismissed. The vacation of Division Street was a collateral issue between the county and the city and had no bearing on Ricci's interest in parcels C and D. In addition, the city has established that Division Street has since been turned over to it and that it has taken the necessary steps to vacate the street. While we do not condone the actions taken by the city, Ricci cannot show that this evidence likely would have affected the outcome of this case. *See*

*Cut Price Super Mkts. v. Kingpin Foods, Inc.*, 256 Minn. 339, 358, 98 N.W.2d 257, 270 (1959).

## DECISION

The district court's dismissal of parcels C and D from the condemnation petition is affirmed.

**Affirmed.**